IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEXTMEDIA GROUP INC., et al.,<br><br>Debtor. | Chapter 11<br><br>Bank. No. 09-14463 (PJW) |
| CBS OUTDOOR INC.,<br><br>Appellant,<br><br>v.<br><br>NEXTMEDIA GROUP INC., et al.,<br><br>Appellees. | Civ. No. 10-1109-SLR |

**MEMORANDUM ORDER**

At Wilmington this 6th day of October, 2011, having reviewed the papers submitted in connection with the above captioned appeal;

IT IS ORDERED that the appeal is denied and the November 5, 2010 decision of the bankruptcy court is affirmed, for the reasons that follow:

1. **Standard of Review.** This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of

historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101-02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. *See In re Hechinger*, 298 F.3d 219, 224 (3d Cir. 2002) (citing *In re Telegroup*, 281 F.3d 133, 136 (3d Cir. 2002)).

2. **Background.** CBS Outdoor Inc. ("CBS") and NextMedia Group Inc. ("NextMedia") own and operate outdoor advertising businesses. (D.I. 11 at 3) On August 29, 2008, CBS and NextMedia entered into an Asset Purchase Agreement (the "Agreement"), pursuant to which NextMedia agreed to sell certain site leases to CBS for $72 million. (D.I. 9 at 3; D.I. 11 at 4) Section 6.15 of the Agreement contemplates a post-purchase price adjustment for any site leases that did not deliver their anticipated value:

> On or prior to the date that is eighteen (18) months from the Closing Date, [CBS] shall provide to [NextMedia] a schedule of those Site Leases acquired by [CBS] hereunder effective as of the Closing Date (the "True-up Schedule") that, between the Closing Date and the first anniversary thereof, have been affected by [certain enumerated events] . . . [NextMedia] agrees that [CBS] shall have a right to payment for the Cash Flow Differential for items that are appropriately scheduled on the True-up Schedule as provided in this Section 6.15.

(D.I. 13 at 30-31) The Agreement sets forth a formula to govern the amount of the adjustment to be paid (the "Cash Flow Differential"): "the change in the Cash Flow for

2

each such Site Lease, on an annualized basis, as a result of the increased lease costs or the loss of such Site Leases or breach of Section 4.9 ['Purchased Contracts']." (*Id.* at 31, 19) The parties dispute whether the closing date referenced in the Agreement occurred on October 3, 2008 or November 1, 2008 and, subsequently, whether the deadline for service of the True-up Schedule is April 3, 2010 or May 1, 2010. (D.I. 11 at 5 n.20) Regardless of the closing date and the deadline for service of the True-up Schedule, CBS did not provide a True-up Schedule to NextMedia until August 24, 2010. (*Id.* at 6)

3. On December 21, 2009, NextMedia filed a chapter 11 petition in the bankruptcy court (D.I. 9 at 3-4), and its plan of reorganization was confirmed on March 22, 2010 (D.I. 11 at 6). CBS filed a proof of claim in the bankruptcy proceeding on March 29, 2010, stating that NextMedia was required to pay the Cash Flow Differential to CBS in an amount to be determined by July 2010. (D.I. 9 at 4) The plan went effective on May 27, 2010. (D.I. 11 at 7) On August 10, 2010, NextMedia objected to CBS's proof of claim. (D.I. 9 at 2) On September 1, 2010, CBS filed an amended proof of claim, asserting an unsecured claim in the amount of $2,027,586.26. (*Id.* at 2, 4)

4. The bankruptcy court heard oral argument on the issues surrounding CBS's proof of claim on October 12, 2010 and issued its opinion on November 5, 2010, disallowing CBS's claim. (D.I. 9 at 2) Currently pending before this court is CBS's appeal of the bankruptcy court's November 5, 2010 opinion.

5. **Analysis.** CBS appeals the bankruptcy court's November 5, 2010 ruling on two grounds, claiming that: (1) the bankruptcy court erred in construing the language of

3

the Agreement as a condition precedent, as opposed to a promise; and (2) if the Agreement contained a condition precedent, then the bankruptcy court erred in imposing a forfeiture of CBS's right to obtain a purchase price adjustment. For the following reasons, the court will deny CBS's appeal and uphold the bankruptcy court's opinion.

6. The bankruptcy court found that, pursuant to § 16.5 of the Agreement, timely certification was an express condition of either party's duty to pay; as CBS did not deliver a True-up Schedule within the 18-month window, NextMedia's obligation to pay did not arise. On appeal, CBS contends that § 16.5 of the Agreement contains a covenant or a promise, not a condition. According to CBS, the contract does not contain conditional language requiring payment of the Cash Flow Differential to be dependent on the timely provision of the schedule. As it did below, CBS cites the "no waiver" provision of the Agreement (§ 9.3) in support of its contention.[1]

---

[1] Section 9.3 provides in part:

> This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought. No action taken pursuant to this Agreement, including any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be considered as a further or continuing waiver of any other of subsequent breach. **No failure on the part of any party to exercise, and no delay in exercising, any right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.**

(D.I. 13 at 41) (emphasis added)

4

7. The court agrees with NextMedia (and the analysis of the bankruptcy court) that the language of the Agreement provides the 18-month window as a condition precedent to NextMedia's obligation to pay CBS. As an initial matter, NextMedia would have to receive the True-up Schedule before it could calculate payment to CBS, so receipt of the True-up Schedule fits into the legal description of a condition precedent. See Restatement (Second) of Contracts § 237, cmt. d) As the bankruptcy court noted, the Agreement uses non-conditional language ("Purchaser **shall** provide to Seller. . .") and provides that "Purchaser shall have a right to payment for the Cash Flow Differential **for items that are appropriately scheduled** on the True-Up Schedule as provided in this Section 6.15." (D.I. 13 at 30-31) (emphasis added)

8. CBS contends that the service within 18 months would be specified in § 7.2 of the Agreement, entitled "Conditions Precedent to Obligations of the Purchaser," if it was truly a condition precedent. The absence of the 18-month service period for the True-up Schedule from § 7.2 does not, however, nullify the plain import of § 6.15. As the caselaw cited by the bankruptcy court demonstrates, a condition precedent may be provided by the language of the contract without having been labeled as such. See, e.g., Vague v. Bank One Corp., Civ. No. 18741, 2006 WL 290299 (Del. Ch. Feb. 1, 2006) (barring plaintiff from exercising option rights that had expired pursuant to unambiguous language in the operative agreements).[2] Because § 6.15 is unambiguous, it may effect a forfeiture on CBS's ability to recover. See Martin v.

---

[2] CBS challenges the authority relied upon by the bankruptcy court because both cases were unpublished decisions, the legal and factual analyses were distinguishable from this case, and one case relied on New York law. The court declines to discount the caselaw on these grounds.

5

*Hopkins*, Civ. No. 05C-04-027, 2006 WL 1915555, *6 (Del. Super. 2006) (citation omitted).

9. Even if the provision is construed as a condition, CBS argues that the bankruptcy court erred in enforcing the forfeiture because the breach of the condition was not material under the five factors set forth in the Restatement (Second) of Contracts, § 241.[3] That is, NextMedia was not deprived of the benefit of the bargain because, even if CBS had complied with the condition, the automatic stay would have prohibited any creditor from making a demand for payment on the debtor. According to CBS, the forfeiture was harsh and disproportionate, CBS has since cured its failure, and it did not act in bad faith.

10. CBS submitted the True-up Schedule on September 1, 2010, well after it was served with the plan and notice of the plan's effective date (May 27, 2010). CBS had filed only a "naked" (or unsubstantiated) proof of claim by the plan's effective date. Section 11.2 of the plan provides that claim holders waive claims arising before the

---

[3]Section 241 provides:

In determining whether a failure to render or to offer performance is material, the following circumstances are significant:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and]
(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

6

effective date regardless of whether a proof of claim had been filed. (Bank. No. 09-14463, D.I. 299, ex. A) While it is not impossible to amend a claim after a plan of organization has been confirmed and rendered effective, a party must generally show good cause to do so. *See, e.g., In re Garden Ridge Corp.*, 348 B.R. 642 (Bank. Del. 2006) (court may extend the period in which a proof of claim may be filed upon a finding of "excusable neglect"). While the Third Circuit does not appear to have addressed the issue, the Eleventh Circuit has recently followed the Seventh Circuit in holding that *res judicata* precludes post-confirmation amendments absent some "compelling reason." *In re Winn-Dixie Stores, Inc.*, 639 F.3d 1053, 1056 (11th Cir. 2011) (citing *Holstein v. Brill*, 987 F.2d 1268 (7th Cir. 1993)). CBS's justification for missing the 18-month deadline (basically, that they forgot about it[4]), is not compelling.

11. In sum, the plain language of the Agreement controls and clearly indicates that, without a timely-filed True-up Schedule, CBS's right to payment never arose, regardless of whether CBS subsequently acted in good faith. There is no indication of record that good cause (or a "compelling reason") exists such that the plan may be amended to include CBS's claim or, alternatively, that the plan does not bar CBS's claim on *res judicata* grounds.

12. **Conclusion.** For the reasons explained, the bankruptcy court's decision is affirmed, and the appeal therefrom is denied.

                                                /s/ _____
                                                United States District Judge

---

[4]The bankruptcy court specifically noted that CBS has not offered a sufficient explanation for its non-compliance. Counsel vaguely indicated at oral argument that a clerical mistake occurred. CBS does not, on appeal, offer an explanation. (D.I. 9)